## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAKYA LITTLE,

            *Plaintiff*,

    v.

MERRICK B. GARLAND,
U.S. Attorney General

            *Defendant.*

No. 22-cv-1511 (DLF)

## <u>MEMORANDUM OPINION</u>

Plaintiff Makya Little brings this employment action against the United States Attorney General. Before the Court is the Attorney General's Partial Motion to Dismiss, or Alternatively, for Partial Summary Judgment, Dkt. 10. For the reasons that follow, the Court will grant the Attorney General's motion and dismiss parts of the complaint.

## I.    BACKGROUND[1]

At all relevant times, Little, an African-American woman, was employed at the Federal Bureau of Investigation. Compl. ¶¶ 31, 35, Dkt. 1. From 2017 to 2020, she served in a joint duty assignment at the Central Intelligence Agency. *Id.* ¶ 34. Her first-line supervisor at the FBI was Katherine Cole. *Id.* ¶¶ 36. Starting around May 2019, Little started raising concerns within the FBI about "unfair practices of promotion discrimination against African Americans." *Id.* ¶ 38.

---

[1] In resolving the District's motion to dismiss, the Court has assumed the truth of the material factual allegations in the complaint, *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), and any documents incorporated by reference to the complaint, *see EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Around June 2019, A. Tonya Odom, the then-Section Chief of the FBI's Office of Diversity and Inclusion, received a copy of Little's resume, *id.* ¶¶ 40, 42, and discussed its contents with Sonya Holt, the CIA's Chief Diversity and Inclusion Officer, *id.* ¶ 46. Odom informed Holt that Little had misrepresented on her resume that she was a co-founder of the Diversity Agent Recruitment Program. *Id.* ¶ 47. In a January 2020 conversation, Odom told Little to stop referring herself to a co-founder of the program, even though the other co-founder of the program had mailed Odom a letter of recommendation confirming that Little was a co-founder. *Id.* ¶¶ 79–83.

On December 19, 2019, Little was not selected for two positions at the FBI: the Human Resources Division Assistant Section Chief position and the Counterterrorism Division Unit Chief position. *Id.* ¶ 60. According to Little, she was not chosen because Odom had told Cole that Little made false statements on her resume, and Cole in turn "held her own animus against [Little] for her engagement in [equal employment opportunity] activity." *Id.* ¶¶ 63–65. Similarly, in January 2020, Little was not selected for the National Security Branch Unit Chief position, *id.* ¶ 95, and, in April 2021, also was not selected for the Section Chief position in the Office of Diversity and Inclusion, *id.* ¶ 108. For the latter position, Odom was a member of the interview panel but did not recuse herself. *Id.* ¶ 106.

At a January 23, 2020, meeting, Little requested "diversity-related data" from the Human Resources Division in order to "discuss . . . recommendations for how to enhance equity in the promotion process." *Id.* ¶ 87. Her request was denied, and she never received the relevant data or an explanation for the denial. *Id.* ¶¶ 88–94.

Finally, in 2021, Little applied for and received a verbal offer for a job position with Bravo Consulting Group, LLC. *Id.* ¶ 52. But Bravo rescinded the offer, allegedly because it had received negative information about Little from Holt. *Id.* ¶¶ 54–57.

On January 30, 2020, Little filed a complaint in case number 570-2021-00432X (Case 1) with the Equal Employment Opportunity Commission (EEOC) regarding her non-selection for three positions in December 2019 and January 2020, as well as the denial of her request for diversity data. *Id.* ¶¶ 8–12. On April 21, 2021, Little filed a second EEOC complaint in case number FBI-2021-00130 (Case 2) regarding the hiring process for the Office of Diversity and Inclusion position for which she was not selected in April 2021. *Id.* ¶ 21–24.

After she did not receive a final agency decision in either of these EEOC cases, *id.* ¶¶ 19, 29, Little filed a complaint in this Court against the Attorney General. Dkt. 1. She alleges causes of action for race-based discrimination, gender-based discrimination, retaliation, and hostile work environment in violation of Title VII. *Id.* ¶¶ 110–157. The Attorney General filed a partial motion to dismiss, or alternatively, for partial summary judgment. Dkt. 10. He asks the Court to dismiss Little's hostile work environment and denial of "diversity-related data," Compl. ¶ 87, claims for failure to state a claim. *See* Def.'s Mem. at 1–2, Dkt. 10. He further seeks dismissal of her hostile work environment and gender discrimination claims arising out of Case 1 for failure to exhaust administrative remedies. *See id.*

## II.    LEGAL STANDARDS

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a

defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (cleaned up).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation omitted).  The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.    ANALYSIS

### A.    Claims Arising Out of Failure to Provide Data

To state an unlawful discrimination claim under Title VII, a plaintiff must plausibly allege that "(i) [she] suffered an adverse employment action (ii) because of [her] race, color, religion, sex, or national origin." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). The Circuit recently clarified that, to constitute an adverse action sufficient to support a discrimination claim, an employer's action need only "affect[] an employee's 'terms, conditions, or privileges of employment.'" *Chambers v. District of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022) (en banc) (quoting 42 U.S.C. § 2000e-2(a)(1)).  For a retaliation claim, a plaintiff must allege more—namely, that she suffered a materially adverse action that "well might . . . dissuade[] a

reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (citation omitted); *see also Chambers*, 35 F.4th at 877.  The action need not "affect the terms and conditions of employment," *Baird*, 662 F.3d at 1249 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)), but it must "result in tangible job consequences like a change in pay, position, or promotional opportunities," *Heavans v. Dodaro*, No. 22-cv-836, 2022 WL 17904237, at *9 (D.D.C. Dec. 23, 2022).

The Attorney General's alleged refusal to give Little diversity-related data that she requested, *see* Compl. ¶¶ 87–94, does not constitute an adverse action sufficient to support either a discrimination or a retaliation claim.  Even under the "capacious" standard adopted in *Chambers*, "not everything that happens at the workplace affects an employee's terms, conditions, or privileges of employment." *Chambers*, 35 F.4th at 874 (internal quotation marks omitted).  As courts, including the Supreme Court, have "oft-repeated," "Title VII is not a 'general civility code' that makes actionable 'the ordinary tribulations of the workplace.'" *Heavans*, 2022 WL 17904237, at *8 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Little has alleged no facts to establish that the Attorney General's refusal to provide diversity-related data either affected her terms, conditions, or privileges of employment, *see Garza v. Blinken*, No. 21-cv-2770, 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023) (proposed letter of reprimand not adverse action because plaintiff did "not state that the [letter] . . . resulted in . . . anything to suggest that the terms and conditions of her employment were affected at all"); *Heavans*, 2022 WL 17904237, at *8 (act that did not affect any aspect of employment cannot be adverse action), or had sufficiently adverse consequences to support a retaliation claim, *see Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (act not adverse action because it did not "result in significantly different responsibilities or objectively tangible harm" (cleaned up)).  Little has not alleged, for example,

that having access to the data was a privilege of her employment, or that her inability to view the data prevented her from completing her job.  And she cannot fix the absence of such allegations in her complaint by adding, in her opposition briefs, an allegation that the denial of data "prevent[ed] her [from] serv[ing] as a certified and experienced Diversity and Inclusion Practitioner."  Pl.'s Opp. at 8, 13, Dkt. 12.  "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) (cleaned up).  To be sure, evidence relating to the Attorney General's alleged failure to provide Little with the requested data may be relevant to her other claims, including her rejection from other positions, *see, e.g.*, Pl.'s Opp. at 13.  But, at least as alleged, the act cannot by itself constitute an actionable adverse action.  The Court will therefore dismiss, under Rule 12(b)(6), any alleged race- or gender-based discrimination or retaliation claim arising out of the Attorney General's failure to provide Little with data.

**B.    Gender Discrimination Claims Arising Out of Case 1**

A federal employee bringing claims under Title VII must timely exhaust administrative remedies before filing suit in federal district court.  *See Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012).  For such Title VII claims, a "plaintiff's . . . failure to exhaust her administrative remedies does not deprive the Court of jurisdiction."  *Morris v. Off. of Pers. Mgmt.*, No. 20-cv-0016, 2021 WL 2188143, at *4 (D.D.C. May 28, 2021); *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019).  The Court will thus evaluate the Attorney General's exhaustion arguments under Rule 12(b)(6).  *Carter v. Carson*, 241 F. Supp. 3d 191, 195 (D.D.C. 2017).  To do so, the Court "may consider a plaintiff's EEO complaint and notice of charge without converting [the] motion to dismiss into a motion for summary judgment because such records are public documents of which a court may take judicial notice."  *Spence v. Wolf*, No. 19-cv-2919, 2020 WL 6075727,

at \*3 (D.D.C. Oct. 15, 2020) (cleaned up).  In this Circuit, the exhaustion requirement limits the scope of an employee's complaint in federal court "to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up).

As an initial matter, with respect to Little's gender discrimination claim arising out of the acts described in her first EEOC complaint in Case 1, Little has conceded the Attorney General's exhaustion argument by failing to address it in her opposition.  *See* Pl.'s Opp.; *Hopkins v. Women's Div.*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition . . . and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").   And even had she not, the Court would dismiss her claim on exhaustion grounds because her EEOC complaint in Case 1 contains no reference to any gender-based discrimination.  Corado Decl. at FBI 39–42, Dkt. 11.  Little checked only "race" and "reprisal" as alleged bases for discrimination—not gender.  *Id.* at FBI 73.  Because a gender discrimination claim is not like or reasonably related to a race discrimination or retaliation claim, Little did not properly exhaust any gender discrimination claim arising out of the acts identified in her first EEOC complaint.  *See Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 455 (D.D.C. 2014) ("Courts in this district have not permitted suits to proceed . . . where a plaintiff files a suit alleging a new substantive theory of discrimination that was not addressed in the original EEOC charge . . . ."); *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60–61 (D.D.C. 2009) ("Discrimination claims based on race and disability are different from discrimination claims based on gender and retaliation."); *Brown v. District of Columbia*, 251 F.

Supp. 2d 152, 162 (D.D.C. 2003) (gender discrimination and retaliation claims not exhausted where plaintiff only checked boxes for race and disability discrimination).[2]

### C.       Hostile Work Environment Claim

To state a hostile work environment theory in support of either a discrimination or retaliation claim, a plaintiff must plausibly allege that her employer "subjected [her] to 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create[d] an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The acts in question must be both (1) of sufficient severity or pervasiveness and (2) "adequately linked such that they form a coherent environment claim." *Menoken v. Dhillon*, 975 F.3d 1, 6 (D.C. Cir. 2020) (cleaned up).  As to the former requirement, the conduct "must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.  In assessing whether a hostile work environment exists, "courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Richardson v. Petasis*, 160 F. Supp. 3d 88, 126 (D.D.C. 2015) (quoting *Harris*, 510 U.S at 23).

Little alleges that Attorney General subjected her to a hostile work environment by not giving her requested diversity-related data, falsely stating that she made misrepresentations on her resume, not selecting her for certain positions, and giving a potential employer negative

---

[2] The Attorney General also seeks dismissal of Little's hostile work environment claims on exhaustion grounds. *See* Def.'s Mem. at 3–5.  But the Court need not reach this argument because Title VII exhaustion is not jurisdictional.  As explained, *see infra* section III.C, the Court will instead dismiss Little's hostile work environment claims for failure to state a claim.

information about her.  *See* Compl. ¶¶ 149–157.  As discussed above, Little has not alleged that the Attorney General's refusal to provide data affected her conditions of employment.  And the remaining actions are mere "work-related actions by supervisors."  *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012).  Without more, such actions are "typically" not "sufficient for a hostile work environment claim" because they are not so severe as to rise to the level of a hostile work environment.  *Id.*; *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile work environment claim based on employer's "interference with [the plaintiff's] work," "multiple failures to promote," denial of leave requests, and "discussions to end [the plaintiff's] eligibility for workers' compensation and to terminate his employment"); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 216, 219–21 (D.D.C. 2013) (dismissing hostile work environment claim where the employer repeatedly failed to promote the plaintiff, interfered with her efforts to hire staff, "manipulated her performance evaluations, denied her bonuses to which she was entitled," and more); *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 91–92 (D.D.C. 2014) (dismissing claim where plaintiff "was denied promotions, hired at a lower initial grade, and given subjective job-performance reviews").  Nor are the handful of acts identified, which occurred across over two years, "fairly characterized as pervasive."  *Laughlin*, 923 F. Supp. 2d at 220 (acts that were "relatively infrequent" and "span[ned] a period of several years" too isolated to support hostile work environment claim).  Because Little has not alleged actions sufficiently severe or pervasive to create a hostile work environment, the Court will dismiss Count IV of the complaint for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court grants the Attorney General's partial motion to dismiss.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

April 12, 2023